# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-197V
Filed: November 9, 2020

| | | |
|---|---|---|
| * * * * * * * * * * * * * | | |
| LEONARD SHEARER, | * | To Be Published |
| | * | |
| Petitioner, | * | |
| v. | * | Decision on Attorneys' Fees and Costs; |
| | * | Reasonable Basis; Proof of Vaccination; |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | | |

*Richard Gage, Esq.*, Richard Gage, P.C., Cheyenne WY, for petitioner.
*Claudia Gangi, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On February 8, 2018, Leonard Shearer ("Mr. Shearer," or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleged that he developed Guillain-Barre Syndrome ("GBS") as a result of receiving an influenza ("flu") vaccination in late February 2015. Petition ("Pet."), ECF No. 1. On June 3, 2019, the undersigned issued a Decision dismissing the petition for insufficient proof. Decision, ECF No. 32. Petitioner now seeks an award of attorneys' fees and costs. For the reasons set forth below, I hereby **DENY** petitioner's Motion for Attorneys' Fees and Costs.

---

[1] This Decision has been formally designated "to be published," which means it will be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Procedural History

The petition was filed on February 8, 2018 and assigned to the Special Processing Unit ("SPU") on February 9, 2018. ECF Nos. 1, 5. Petitioner filed medical records as Petitioner's Exhibits ("Pet. Ex.") 1-4 on February 19, 2018. ECF No. 6. On February 20, 2018, petitioner filed a Motion for Extension of Time until March 22, 2018, to file additional medical records and a Statement of Completion. ECF No. 8. Petitioner's Motion was granted. ECF No. 9. Petitioner filed additional medical records and a Statement of Completion on March 22, 2018. Pet. Ex. 5-6, ECF No. 10; Statement of Completion, ECF No. 11.

The initial status conference was held on April 11, 2018. During the status conference, inquiry was made of petitioner's counsel as to whether petitioner had obtained a vaccination record for the February 2015 influenza vaccination. Scheduling Order at 1, ECF No. 12. Petitioner's counsel requested 30 days to obtain and file the vaccination record. *Id*. Additional medical records and an amended Statement of Completion were Ordered to be filed by May 11, 2018 as well. *Id*.

On May 11, 2018, petitioner filed a Motion for Extension of Time until June 11, 2018, to file additional medical records and an amended Statement of Completion; petitioner's Motion was granted. ECF No. 13-14.

On June 11, 2018, petitioner filed a second Motion for Extension of Time until July 11, 2018. ECF No. 15. Petitioner advised that he also planned to file an affidavit regarding his vaccination. *Id*. Petitioner's Motion was granted.

On June 21, 2018, petitioner filed an affidavit regarding his vaccination as Pet. Ex. 7 and an amended Statement of Completion. ECF No. 17-18. In his affidavit, petitioner stated, "In late February of 2015 I received a (sic) influenza vaccination in Phoenix, Arizona. I have been unable to recall what clinic I received the vaccination at an (sic) do not have a copy of the vaccine administration record." Pet. Ex. 7 at 1.

On August 20, 2018, respondent filed a status report requesting additional time to review petitioner's medical records. ECF No. 19. Respondent was ordered to file a status report by October 22, 2018. ECF No. 20. On October 22, 2018, respondent filed a status report requesting an additional 45 days to review petitioner's medical records; he was ordered to file a status report by December 10, 2018. ECF No. 23-24. On December 10, 2018, respondent filed a status report requesting a deadline of February 8, 2019 to file his Rule 4(c) Report. ECF No. 25. An Order was issued setting a deadline of February 8, 2019 for respondent's Rule 4(c) Report. ECF No. 26.

Following a request for an extension of time, which was granted, respondent filed his Rule 4(c) Report ("Resp. Rpt.") on March 11, 2019. ECF No. 27; Non-PDF Order, issued Feb. 8, 2019; ECF No. 28. Respondent stated that petitioner's claim was not appropriate for compensation. Resp. Rpt. at 1. Respondent submitted that petitioner had not put forth preponderant evidence that he actually received a flu vaccine in February 2015. *Id*. at 5. Respondent further submitted that petitioner did not meet the criteria for an on-Table claim of GBS following flu vaccine. *Id*. at 6-7.

This matter was reassigned to me on April 11, 2019. ECF No. 30. Petitioner filed a Motion for a Dismissal Decision on May 30, 2019, "[a]fter repeated and thorough, yet unsuccessful, attempts to obtain proof of Petitioner's vaccination in February of 2015. . .." Motion at 1, ECF No. 31. A decision dismissing the petition was issued on June 3, 2019. ECF No. 32.

On December 2, 2019, petitioner filed a Motion for Attorneys' Fees and Costs. Motion for Fees, ECF No. 37. Petitioner requests attorneys' fees in the amount of $5,968.20 and attorneys' costs in the amount of $819.41, for a total amount of $6,787.61. *Id.* at 4. In accordance with General Order #9, petitioner's counsel represents that petitioner did not incur any out-of-pocket expenses. *Id*. at 36. The billing records filed with petitioner's fee application indicate that counsel was first contacted in August of 2016 and officially retained in December of 2016, over a year before the Petition was filed in February of 2018. *See* Motion for Fees, Tab B at 6.

On December 11, 2019, respondent filed a response to petitioner's Motion for Fees. Response, ECF No. 38. Respondent opposed petitioner's application for fees and submitted that petitioner failed to establish a reasonable basis for his claim. *Id*. at 1.

Petitioner filed a reply to respondent's response on January 10, 2020 and an additional memorandum on March 6, 2020. Reply, ECF No. 40; Memorandum, ECF No. 41.

## II. Summary of Relevant Medical Records

Based on the medical records filed, it appears that petitioner received regular medical care from both the Phoenix Veterans Administration Health Care System ("the VA") and 56th Medical Group at Luke AFB. *See generally* Pet. Ex. 1; Pet. Ex. 3; Pet. Ex. 6.

On October 17, 2014, petitioner presented to the VA and received a flu shot. Pet. Ex. 6 at 241. He was noted to be a 62-year-old man with a history of hyperlipidemia, chronic low back pain, osteoarthrosis in his shoulder, obesity, hypertension, allergic rhinitis, rotator cuff tear, impingement syndrome, and impaired fasting glucose. Pet. Ex. 6 at 238-240. Petitioner received a pneumovax vaccination three days later, also from the VA. Pet. Ex. 5 at 1.

Between October 17, 2014 and February 2015, petitioner received medical care on multiple occasions from both the VA and 56th Medical Group at Luke AFB. *See, e.g.*, Pet. Ex. 1 at 122-24 (petitioner's presentation on October 21, 2014 for a follow-up for diabetes); Pet. Ex. 1 at 128-29 (petitioner's presentation on October 24, 2014 for cardiopulmonary and allergy consults); Pet. Ex. 1 at 130-33 (petitioner's telephone call requesting a refill of his Lipitor prescription); Pet. Ex. 6 at 60 (brain MRI ordered for progressive hearing loss); Pet. Ex. 6 at 234-37 (petitioner's presentation on December 19, 2014 for a follow-up with Dr. Yang); Pet. Ex. 6 at 233 (hearing aid replacement on February 6, 2015).

On March 1, 2015, petitioner telephoned the VA about an ordered MRI of the brain that had not yet been authorized. Pet. Ex. 6 at 61. Petitioner called 56th Medical Group on March 4, 2015 requesting a refill of his prescription for Lipitor and lisinopril. Pet. Ex. 1 at 137-38.

3

On March 14, 2015, petitioner presented to Arrowhead Hospital Emergency Room complaining of slurred speech and a loss of balance that began on March 12, 2015 and progressively got worse. Pet. Ex. 4 at 141. Petitioner reported yesterday, he passed out, fell, and hit his forehead. *Id*. "Today, his speech has got worsened (sic) and not able to walk, has to use a cane…He has some headache after the fall…He has tingling sensation in the fingers." *Id*. A head CT was negative. *Id*. He was admitted for an MR angiogram to rule out a stroke. *Id*. at 141-42. Petitioner did not report a recent flu vaccine to his treaters in the ER.

A nursing note recorded later that day stated, "Pt states he has been off balance since Thursday at approx 1130 am. Pt fell Friday morning hitting his head on the windowsill at home. Abrasion to forehead noted." Pet. Ex. 4 at 214. A brain MRI was unremarkable. Pet. Ex. 4 at 218-19. A head CT showed no acute intracranial abnormality. Pet. Ex. 4 at 216.

A neurology consult with Dr. Epstein on March 16, 2015 noted petitioner's symptoms began with difficulty swallowing, chewing, and talking. Pet. Ex. 4 at 145. His symptoms progressed to trouble with balance and walking. *Id*. Petitioner reported that "a previous osteopath told him that he has neuropathy." *Id*. at 146. Petitioner did not report a recent flu vaccine to Dr. Epstein. Dr. Epstein's impression was brainstem ischemia with a negative MRI, obesity, hypertension, diabetes, dyslipidemia, and peripheral neuropathy. *Id*.

Petitioner was discharged on March 16, 2015 with a diagnoses of slurred speech and unsteady gait, possibly a transient ischemic attack; syncope, possibly due to orthostasis; diabetes with likely complicating issues, including neuropathy and small vessel ischemic changes noted on MRI, morbid obesity, hyperlipidemia, and hypertension. Pet. Ex. 4 at 149. He was noted to have a history of vitamin B12 deficiency and was taking B12 shots but had stopped. *Id*. at 148. Petitioner was instructed to follow up with Dr. Epstein in two to four weeks. *Id*. at 150.

On March 17, 2015, petitioner sent a message to Dr. Cruz at 56th Medical Group. He requested authorization to see a neurologist. Pet. Ex. 1 at 139. Dr. Cruz referred petitioner for a neurology consult. *Id*. at 140.

A brain MRI was performed on March 25, 2015 that showed bilateral facial nerve enhancement, "characteristic for Bell's palsy," along with mild chronic microvascular ischemia, and an old facial fracture that had healed Pet. Ex. 6 at 4-5.

On April 7, 2015, petitioner presented to Dr. Epstein for follow-up for suspected TIA. Pet. Ex. 2 at 1; Pet. Ex. 3 at 1. He was noted to have a long-term vitamin B12 deficiency. *Id*. Petitioner reported numbness and burning in both hands and his tongue, generalized weakness, difficulty with balance, and fatigue. *Id*. The assessment was basilar artery stroke and vitamin B12 deficiency. *Id*. at 3. Dr. Epstein recommended physical therapy, continued vitamin B12 shots, and an EMG/NCS. *Id*. An EMG/NCS performed on April 20, 2015 revealed a motor-sensory neuropathy. *Id*. at 4-6.

On April 23, 2015, petitioner presented to Arrowhead Hospital with weakness, paresthesias, altered speech, and altered coordination. Pet. Ex. 3 at 5. His family reported that petitioner was suspected to have GBS and had applied for authorization for IVIG treatment. *Id*. He

4

was admitted for suspected GBS. *Id*. at 6-7. A consultation on April 24, 2015 noted that petitioner had an EMG four days before with findings consistent with a demyelinating sensorimotor neuropathy. *Id*. at 8. Upon exam, petitioner had no weakness in the upper extremities but absent reflexes in the lower extremities. *Id*. at 9. The impression was progressive numbness and weakness in the extremities and difficulty ambulating; EMG nerve findings consistent with a demyelinating sensory motor neuropathy, like chronic inflammatory demyelinating polyneuropathy/acute demyelinating polyneuropathy; history of diabetes and hypertension; and borderline deficient vitamin B12. *Id*. at 9-10. The plan was to administer IVIG for four or five days. *Id*. at 10. Petitioner was discharged on April 27, 2015, having "remarkably improved." *Id*. at 11-12. None of the records for this hospital admission refer to a flu vaccination received in February of 2015.

On May 1, 2015, petitioner presented to Dr. Cruz at 56th Medical Group for a follow-up after a hospital visit for "possible guillain barre syndrome (sic)." Pet. Ex. 1 at 151. He reported that he had had five days of IVIG and needed a referral to physical and occupational therapy. *Id*. He also requested a referral for surgery for glaucoma in his right eye. *Id*.

Petitioner presented to Dr. Epstein on May 11, 2015 for a follow-up for neuropathy. Pet. Ex. 2 at 7. His strength and coordination had improved, he was using a cane rather than a walker, and he was swallowing well. *Id*. The assessment was inflammatory neuropathy. *Id*. at 9. Petitioner was instructed to follow-up in four weeks. *Id*.

Petitioner returned to Dr. Epstein on July 28, 2015 for follow-up for neuropathy and stroke. Pet. Ex. 2 at 10; Pet. Ex. 3 at 26. He reported an IVIG infusion on June 10 which helped. *Id*. Dr. Epstein noted, "Clearly Mr. Shearer suffered a stroke and has obstructive sleep apnea. His nerve conductions confirm a neuropathy, suggestively demyelinating." *Id*. at 12. Dr. Epstein recommended following with a neuromuscular subspecialist and another EMG/NCS. *Id*.

On August 24, 2015, petitioner had his first appointment with Dr. Tamm. Pet. Ex. 3 at 33. Petitioner reported "abrupt onset of left facial weakness, altered taste, and loss of balance in mid-March." *Id*. There was no mention of a flu vaccine in February of 2015.

Petitioner presented to Dr. Levine on September 25, 2015, for an EMG/NCS. Pet. Ex. 3 at 37-41. The EMG "found evidence of a moderate right carpal tunnel syndrome and a mild axonal neuropathy…[but] no evidence of active denervation." *Id*. at 40. Dr. Levine noted that he explained "that this was most likely either a mild idiopathic neuropathy or a resolving case of Guillain-Barre." *Id*.

On October 20, 2015, petitioner received a Tdap vaccination. Pet. Ex. 6 at 53. He declined to receive a flu vaccine. *Id*. at 215. Petitioner reported, "I will never get another flu shot…had a reaction to flu shot feb 2015." *Id*. This is the first medical record that references petitioner's claimed receipt of a flu vaccination in February 2015.

Petitioner returned to Dr. Epstein on November 23, 2015. Pet. Ex. 2 at 13. Petitioner had "improved dramatically" with no further recurrence of stroke symptoms. *Id*. Dr. Epstein's assessment was basilar artery stroke, inflammatory neuropathy, vitamin B12 deficiency, and headache. *Id*. at 15. Dr. Epstein recommended a follow-up in six months. *Id*.

5

On January 27, 2016, petitioner presented to Dr. Kafer at 56th Medical Group to discuss results of his bloodwork. Pet. Ex. 1 at 157. Petitioner had elevated triglycerides but normal liver and kidney function. *Id*.

Petitioner returned to Dr. Kafer on February 18, 2016 for a follow-up for diabetes. Pet. Ex. 1 at 160. He did not check his blood sugar on a regular basis. *Id*. He reported that he had been "getting b12 injections after GB from flu shot." *Id*. He had an "umbilical hernia that has been getting bigger over [the] last 6 months." *Id*. Petitioner had a consultation with the general surgery clinic at 56th Medical Group on February 23, 2016 for his hernia; he was encouraged to lose weight before returning to the clinic for reevaluation. *Id*. at 167-69.

Petitioner returned to Dr. Kafer on July 19, 2016, for a six-month follow-up for diabetes mellitus, hyperlipidemia, and hypertension. Pet. Ex. 1 at 172. Petitioner reported that he was "allergic to flu vaccine." *Id*.

On September 28, 2016, petitioner completed a Disability Benefits Questionnaire as part of a Compensation and Pension Exam. Petitioner reported "[h]e had Guillian-Barre (sic) reaction to flu shot, with widespread generalized weakness." Pet. Ex. 6 at 104.

In summary, the medical records document petitioner's receipt of a flu vaccine at the VA flu shot clinic on October 17, 2014 and a pneumovax vaccination three days later. Pet. Ex. 6 at 241; Pet. Ex. 5 at 1. Five months later, on March 14, 2015, petitioner presented to Arrowhead Hospital Emergency Room with complaints of slurred speech and a loss of balance that began on March 12, 2015 and progressively got worse. Pet. Ex. 4 at 141. On October 20, 2015, following seven months of treatment, petitioner declined a flu vaccine, reporting "I will never get another flu shot…had a reaction to flu shot feb 2015." Pet. Ex. 6 at 53. No record of a flu vaccine in February of 2015 was filed. Petitioner's diagnosis at that time was basilar artery stroke, inflammatory neuropathy, vitamin B12 deficiency, and headache. Pet. Ex. 2 at 15. The only references to a February 2015 flu vaccine were made by the petitioner.

### III. Applicable Law and Analysis

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petition results in compensation, petitioner is entitled to reasonable attorneys' fees and costs ("fees" or "fee award"). *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). Where a petitioner does not prevail on entitlement, a special master has discretion to award reasonable fees if the petition was brought in "good faith" and with a "reasonable basis" for the claim to proceed. § 15(e)(1). A petitioner's good faith is presumed "in the absence of direct evidence of bad faith." *Grice v. Sec'y of Health & Human Servs*., 36 Fed. Cl. 114, 121 (1996). Where no evidence of bad faith exists and respondent does not challenge petitioner's good faith, good faith requires no further analysis.

Reasonable basis is an objective inquiry, irrespective of counsel's conduct or looming statute of limitations, that evaluates the sufficiency of petitioner's available medical records at the time a claim is filed. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Human Servs*., No. 99-564, 2005 WL 1026714 at *2 (Fed.

6

Cl. Spec. Mstr. Feb. 10, 2005). A special master's evaluation of reasonable basis is to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient objective evidence to make a feasible claim for recovery. *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018). Reasonable basis is satisfied when available objective evidence, such as medical records or medical opinions, support a feasible claim prior to filing. *See Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)); s*ee Silva v. Sec'y of Health & Hum. Servs*., 108 Fed. Cl. 401, 405 (2012). Where causation is a necessary element to petitioner's claim, petitioner must provide some objective support of a causal relationship between administration of the vaccine and the petitioner's injuries in order to establish that a claim was feasible. *See Bekiaris v. Sec'y of Health & Human Servs.*, 140 Fed. Cl. 108, 114 (2018).

Determination of feasibility is limited to the objective evidence submitted, *Santacroce*, 2018 WL 405121 at *7, but a special master is not precluded from considering objective factors such as "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation."*Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). In *Cottingham*, the Federal Circuit expressly clarified that special masters are permitted to utilize a totality of the circumstances inquiry in evaluating reasonable basis, including, but not exclusively limited to, objective factors such as those identified in *Amankwaa. See Cottingham ex. rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020). The Court reiterated that counsel conduct is subjective evidence, not to be considered when evaluating reasonable basis. *Cottingham*, 971 F.3d at 1345.

While incomplete records do not strictly prohibit a finding of reasonable basis, *Chuisano*, 116 Fed. Cl. at 288, an overwhelming lack of objective evidence will not support reasonable basis. *See Simmons,* 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner disappeared for two years prior to filing a claim). Additionally, a petitioner's own statements are not "objective" for purposes of evaluating reasonable basis and cannot alone support reasonable basis. *See, e.g., Chuisano*, 116 Fed. Cl. at 291; *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018). A claim may lose reasonable basis as it progresses, if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs.,* 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Hum. Servs.,* 33 F.3d 1375, 1376-77 (Fed. Cir. 1994)).

Despite broad discretion, a special master may not abuse their discretion in denying reasonable basis and fees. The Federal Circuit articulated, "failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion" by the special master. *Cottingham*, 971 F.3d at 1345. The petitioner in *Cottingham* submitted an affidavit, a vaccine package insert, and several medical records showing that petitioner suffered adverse reactions listed on the package insert after receiving the vaccine. *See id.* at 1345-46. The Court found that the materials constituted such objective evidence that denying reasonable basis because of "no evidence" was clearly erroneous. *Id.* at 1346-47. Denial of reasonable basis for lack of causation in *Cottingham* constituted an abuse of discretion. *Id.* at 1347. The Court reminded that the burden of proof required for reasonable basis is not as high as that required for causation—

7

"more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Id.* at 1346. However, the Court held that the special master may make factual determinations as to the weight of evidence. *Id.* at 1347.

Here, because petitioner is afforded a good faith presumption and respondent does not challenge such presumption, good faith will not be further discussed.

In a supplement to his Motion for Interim Fees, *see* ECF No. 37-1, petitioner submitted that he contacted counsel "because he suffered the onset of GBS in mid-March, 2015, within "table time" after receipt of a (sic) influenza vaccination." ECF No. 37-1 at 2. The medical records corroborated he suffered GBS in March 2015 and had executed an affidavit stating that he received a flu vaccine in late February 2015. *Id.* at 3. However, petitioner affirmed he could not recall where he received the subject flu vaccine and, despite "extensive effort" by counsel, the vaccination record could not be located. *Id.* Petitioner submitted, "These facts clearly establish" that petitioner's claim was brought in good faith and with a reasonable basis. *Id.*

In his Response, respondent argued that the claim lacked reasonable basis due to a lack of proof of vaccination. Response at 5. Respondent submitted, "There is no record of vaccine administration, and the balance of petitioner's medical records make no reference to his receipt of a flu vaccine in February 2015." *Id.* Respondent pointed to the medical records confirming petitioner's receipt of a flu vaccine on October 17, 2014, four months prior to his alleged vaccination in February 2015. *Id.*; Pet. Ex. 5 at 42. Respondent also pointed out that the Advisory Committee on Immunization Practices ("ACIP") "does not recommend more than one dose of influenza vaccine in a season" and "[t]here is no indication in petitioner's medical records that he required a second dose of flu vaccine during the 2014-15 flu season." *Id.* Respondent argued petitioner's claim lacked reasonable basis when filed due to a lack of evidence to support petitioner's allegation that he actually received a flu vaccine in February 2015. *Id.* at 6.

In his Reply, petitioner argued that his claim had a reasonable basis based on the totality of the circumstances. Reply at 1. Petitioner submitted, "Case precedent supports the proposition that a court may base a finding of fact that a vaccine was administered not only on medical records but also on lay testimony." *Id.* at 2 (internal citations omitted). Petitioner explained that, prior to filing the petition, counsel obtained and reviewed medical records from multiple providers but had not secured a record of vaccination. *Id.* at 3. The petition was filed without proof of vaccination due to a looming statute of limitations[3] in order "to allow Mr. Shearer more time to investigate his claim." *Id.* at 4. Petitioner submitted, "All actions taken on this case were reasonable under the circumstances." *Id.*

In *Cottingham*, the Federal Circuit found that the "objective, totality of the circumstances test [articulated in *Chuisano*] comports with *Simmons*." 971 F.3d at 1344. Cottingham specified that, although the court in Simmons did not discuss the totality of the circumstances test, their silence "should not be taken either as an endorsement or as a rejection of a "totality of circumstances" test." *Id.* at 1345. Rather, *Simmons* clarified the type of evidence required to satisfy the reasonable basis requirement. *Id*. *Simmons* specified that "evidence of attorney conduct and a

---

[3] The billing records indicate that counsel was retained in December of 2016, approximately fourteen months before the Petition was filed in February of 2018.

looming statute of limitations" are forms of subjective evidence and "[c]onsideration of these two types of subjective evidence in a reasonable basis analysis would constitute an abuse of discretion." *Id*.

In the instant matter, petitioner's argument relies heavily on attorney conduct and a looming statute of limitations, two forms of subjective evidence that cannot be considered in a reasonable basis analysis. An affidavit detailing a vaccinee's subjective belief of vaccine-related injury does not constitute objective evidence. *See Chuisano*, 116 Fed. Cl. at 291. Accordingly, petitioner's only objective evidence consists of medical records, which reflect that petitioner received a flu vaccination in October of 2014; suffered GBS in March of 2015 which required hospitalization; and his own report for the first time in October of 2015 that he received a flu vaccine in February of 2015 which made him ill to a treating physician when offered a yearly flu vaccine. *See* Pet. Ex. 6 at 215. Therefore, the only support in the record for a February 2015 flu vaccine was the affidavit of petitioner. Absent any other evidence to support proof of vaccination, petitioner did not have a feasible claim, and there was no reasonable basis for the petition.

### IV. Conclusion

In accordance with the foregoing, petitioner's motion for attorneys' fees and costs is **DENIED**. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[4]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.